# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS A. SNITZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 339 |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Thomas A. Snitzer's ("Snitzer") motion for leave to file an amended complaint and on Defendants' motion for reconsideration. For the reasons stated below, we deny the motion for leave to amend and grant in part and deny in part the motion for reconsideration.

## BACKGROUND

Snitzer alleges that he was a member of River Village I, L.L.C. ("RVI") and other development entities. Defendant Stan-Lee Kaderbek ("Kaderbek") was allegedly the Commissioner for the City of Chicago Department of Buildings from June 2004 to August 2005. Snitzer contends that through RVI, he planned to develop a large single-family home development known as Bridgeport Village-Phase

1

I ("Bridgeport Village") in Defendant City of Chicago's ("City") Bridgeport neighborhood. Snitzer was allegedly the manager for the development of Bridgeport Village. The project began in 1998 and for one year the alderman for the Bridgeport neighborhood allegedly refused to discuss the processing of any zoning request because the Democratic party leadership in that area ("Leadership") allegedly did not want an "outsider" to control or profit in that area. (Compl. Par. 32).

Snitzer claims he was approached by Defendant Timothy Degnan ("Degnan"), who is allegedly a main player in the Leadership. Degnan allegedly told John Kinsella ("Kinsella"), Snitzer's partner, that in order to secure the zoning approval for Bridgeport Village, Degnan's lieutenant, Thomas Dipiazza ("Dipiazza"), needed to be admitted to the development venture as a partner.

Snitzer claims that he initially refused to admit Dipiazza to the venture, but later agreed to retain Dipiazza as a real estate consultant for Bridgeport Village and other development projects in the Bridgeport neighborhood. According to Snitzer, the City approval process for Bridgeport Village then proceeded until the relationship among Snitzer, Dipiazza, and Degnan deteriorated due to Snitzer's refusal to accede to the demands of Dipiazza and Degnan. Snitzer alleges that Degnan and Dipiazza made a series of demands for exorbitant fees, as well as preferential treatment in the purchase of homes in Bridgeport Village for associates of Degnan. Degnan also allegedly instructed Snitzer not to pursue the purchase of certain property because a pre-designated individual associated with Degnan was

supposed to win the bid for the property. Degnan and Dipiazza allegedly repeatedly threatened Snitzer that if he did not acquiesce to their demands they would use their alleged control over City officials to ensure that the development approval process for Bridgeport Village did not proceed smoothly.

From 2002 to 2004, the Bridgeport Village construction allegedly proceeded until Snitzer's alleged unwillingness to acquiesce to the demands of Degnan and Dipiazza caused a complete breakdown in their relationship. Snitzer claims that despite Degnan's alleged instructions and threats, Snitzer bought certain property in March 2003. Also, in January 2005, Snitzer allegedly had a final fight with Degnan and Snitzer terminated Dipiazza's consulting contract.

Snitzer contends that, after that point, Degnan used his influence with the City to inhibit the progress of the continuing development of Bridgeport Village. In November 2004 and January 2005, Snitzer claims the City Department of Buildings issued stop work orders for Bridgeport Village without justification. Kaderbek also allegedly refused to meet to discuss resolving the problems in order to delay the resumption of work on Bridgeport Village, which would result in the exposure of the unfinished houses to the winter weather. According to Snitzer, Kaderbek also threatened the project manager and the architect for Bridgeport Village because they were working for Snitzer. In addition, Kaderbek allegedly filed a false report about the architect with an architectural licensing board. Kaderbek also allegedly continued to refuse to meet with Bridgeport Village representatives to address

problems.

Snitzer claims that Kaderbek also made statements to the public in order to discredit Snitzer by indicating that Snitzer was an incompetent developer and creating unwarranted fear among the Bridgeport Village residents. Kaderbek also allegedly attempted to interfere with the financing for Bridgeport Village. Snitzer alleges that the culmination of Kaderbek's attacks on Snitzer's character came at a public meeting on March 10, 2005, where Kaderbek allegedly made false statements about Snitzer, criticized and threatened Snitzer, and encouraged Bridgeport Village residents to bring a class action suit against Snitzer. Snitzer claims that, afterwards, his partners in the Bridgeport Village venture brought an action in state court ("State Action") seeking to oust Snitzer as the venture manager based upon concerns about Snitzer's competence. Snitzer contends that Kaderbek and other City officials influenced Snitzer's partners in their decision to bring the State Action against Snitzer and that Kaderbek and the other officials even attended the court hearings in the State Action. The state court allegedly entered a temporary restraining order removing Snitzer from the manager position at Bridgeport Village in June 2005. Snitzer claims that once he was removed from the manager position, Kaderbek and the City suddenly became more lenient in the dealings with the Bridgeport Village project.

Snitzer brought the instant action and included in his complaint a claim alleging a deprivation of his First Amendment rights in violation of 42 U.S.C. §

1983 ("Section 1983") (Count I), a Section 1983 procedural due process claim (Count II), a substantive due process claim (Count III), an equal protection claim (Count IV), a conspiracy claim alleging a violation of 42 U.S.C. § 1985(3) ("Section 1985(3)") (Count V), a claim alleging a violation of 42 U.S.C. § 1962(c) of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Count VI), a claim alleging a violation of 42 U.S.C. § 1962(d) of RICO (Count VII), and a civil conspiracy claim (Count VIII).

Defendants moved to dismiss all claims. On August 15, 2007, we granted Defendants' motion to dismiss the First Amendment claim (Count I), the procedural due process claims brought against Degnan and Dipiazza (Count II), the substantive due process claim (Count III), the equal protection claims brought against Degnan and Dipiazza (Count IV), the Section 1985(3) claim (Count V), the claim alleging a violation of 42 U.S.C. § 1962(c) of RICO (Count VI), the claim alleging a violation of 42 U.S.C. § 1962(d) of RICO (Count VII), and the civil conspiracy claim (Count VIII). We denied Defendants' motion to dismiss the procedural due process claims brought against Kaderbek and the City (Count II) and the equal protection claims brought against Kaderbek and the City (Count IV). Defendants move to reconsider the portion of the August 15, 2007 ruling denying in part the motion to dismiss. Snitzer also seeks leave to file an amended complaint.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served." Fed. R. Civ. P. 15(a).

A motion for reconsideration may be brought "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996)(quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D. Ill. 1982)). Such motions cannot be used as a "vehicle to produce new evidence that could have been" produced earlier or as a vehicle to "rehash[]" the same arguments presented to the court on a prior occasion. *Id.* (stating that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion").

## DISCUSSION

### I. Motion for Leave to File Amended Complaint

Snitzer seeks leave to file an amended complaint to remedy "pleading deficiencies" in the original complaint. (Mot. Am. 1). Kaderbek does not oppose

the motion, but the other Defendants argue that Snitzer should not be granted leave based upon futility.

### A. Proper Legal Standard

We first note that Snitzer inexplicably bases his motion for leave to amend the complaint on the legal standard for permissive amendment of a complaint under Rule 15(a), arguing that the court should grant leave to amend freely and is instructed by Rule 15(a) to grant leave "when justice so requires." Fed. R. Civ. P. 15(a); (Mot. Am. 2). However, Snitzer's motion falls under the "as a matter of course" standard, which is actually more favorable to Snitzer. As indicated above, a plaintiff can amend the complaint once as a matter of course before a responsive pleading is filed for the original complaint. Fed. R. Civ. P. 15(a). Although Defendants filed a motion to dismiss in this action, a motion to dismiss is not deemed a responsive pleading for the purpose of Rule 15(a). *See Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995)(stating that "[a] motion to dismiss does not constitute a responsive pleading for purposes of Rule 15(a)"); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir. 1984)(stating that "[i]t is well settled in this circuit that a motion to dismiss is not a 'responsive pleading' within the meaning of Rule 15(a)"). Defendants have not filed an answer to the original complaint and thus Snitzer's motion to amend is based upon the "as a matter of course" standard. We note, however, the right to amend as a matter of course has limits. *See Crestview Village*

*Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 558 (7th Cir. 2004)(stating that "the right to amend as a matter of course is not absolute"). A court can refuse to allow a plaintiff to amend a complaint as a matter of course "'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Id.* (quoting *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)).

### B. Proposed Amendments

Snitzer contends that the amended complaint makes it clear that Degnan and Dipiazza acted under color of state law, and further contends that it corrects the deficiencies in the original complaint relating to the First Amendment retaliation claim.

### 1. Color of State Law

In the August 15, 2007 ruling, we dismissed the claims brought against Degnan and Dipiazza in Counts II and IV since there were not sufficient facts that indicated that Degnan and Dipiazza acted under color of state law. *See Christensen v. County of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007)(stating "[i]n order to state a claim under § 1983, the plaintiffs must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws

8

of the United States"). Snitzer proposes to amend his complaint to include additional allegations connecting Degnan and Dipiazza to Kaderbek. For example, Snitzer intends to allege that "Degnan and Dipiazza were willful participants in joint action with defendants Kaderbek and the City of Chicago." (Mot. Am. 5). Defendants other than Kaderbek argue that the court should not allow Snitzer to make such amendments since the amendments would not cure the deficiencies and would not survive a second motion to dismiss.

Snitzer has not actually added new factual allegations that would revive his claims against Degnan and Dipiazza. There are no new facts included that illustrate the alleged agreement and conspiracy among Degnan, Dipiazza, Kaderbek, and the City. Instead, Snitzer has added conclusory legal jargon, alleging that the parties were "willful participants in joint action. . . ." (Mot. Am. 5). Such generalized allegations do not "plausibly suggest that [Snitzer] has a right to relief. . . ." *E.E.O.C. v. Concentra Health Servs., Inc.* 496 F.3d 773, 776 (7th Cir. 2007)(citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). According to Snitzer's own allegations, Degnan and Dipiazza are private actors, acting for their own personal interests. We cannot assume in the absence of facts in the complaint that Degnan and Dipiazza formed some agreement with Kaderbek and the City to punish Snitzer for refusing to accord Degnan and Dipiazza the alleged requested favors. Therefore, we find that the proposed amendments in regard to the color of state law issue would be futile.

## 2. First Amendment Retaliation Claim (Count I).

We granted Defendants' motion to dismiss the First Amendment retaliation claim since there were no such allegations in the original complaint that tie the alleged misconduct by government officials to retaliation against Snitzer for his political speech, his political views, or his lack of support for a political party. *See O'Hare Truck Servs., Inc. v. City of Northlake*, 518 U.S. 712, 715 (1996)(addressing First Amendment retaliation in a case in which the plaintiff was allegedly retaliated against by a local government official because the plaintiff supported the opponent of the official during elections). Although Snitzer indicated in the original complaint that Degnan and Dipiazza were connected to a particular political party, there were no allegations that tied the alleged demands by Degnan and Dipiazza to Snitzer's support or opposition to that political party. Also, Snitzer did not allege that any of the monies or other benefits that he provided to Degnan and Dipiazza were ever used in turn to support a political party.

Snitzer proposes to add language to Count I of the original complaint indicating that "[b]y refusing Degnan['s] and Dipiazza's various improper demands, Snitzer was exercising his right not to associate with Degnan and Dipiazza, the 11th Ward Democratic Organization with whom they are affiliated, and its allies." (Mot. Am. 3). Such allegations, however, are insufficient to connect the alleged favors sought by Degnan and Dipiazza to Snitzer's support or opposition of a political party. As discussed in our prior ruling, the allegations in the original complaint that

Snitzer would like to incorporate into the amended complaint, clearly state that Degnan and Dipiazza were allegedly attempting to obtain benefits for themselves and their associates. Mere allegations that Degnan and Dipiazza were leaders of a political organization is not sufficient to revive Snitzer's First Amendment retaliation claim.

Snitzer also proposes to add language to the original complaint that states that "[a]lthough Snitzer does not know whether the requested favors . . . would have been used directly to support a particular political candidate, party or political organization, these sorts of favors were requested to benefit a corrupt political system in which loyalists to political candidates, organization and parties are rewarded and political enemies are punished." (Mot. Am. 3). Thus, in the proposed amendment Snitzer specifically acknowledges that he does not know whether the alleged favors sought by Degnan and Dipiazza were diverted to support the political organization to which they allegedly belong. Snitzer's supposition that Degnan and Dipiazza were involved in "a corrupt political system" and thus must have used the favors granted to them to further their political interests is exactly the type of speculation that has recently been found by the Seventh Circuit to be insufficient to state a claim. *Concentra Health Servs., Inc.*, 496 F.3d at 776(stating that a plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court")(quoting in part *Bell Atlantic*

*Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). Snitzer provides no facts to support his conjecture concerning corruption and political patronage and thus we find that Snitzer's proposed amendments to the First Amendment retaliation claim would be futile. Therefore, we deny Snitzer's motion to amend the complaint.

II. Motion for Reconsideration

Defendants request that the court reconsider the portion of this court's August 15, 2007 ruling, denying in part the motion to dismiss. We first note that Defendants requested leave at the end of the motion for reconsideration to file a supporting memorandum. However, Defendants were not required to seek such leave and, regardless, such a memorandum was not necessary. Defendants' motion is five pages in length, providing detailed arguments, and Defendants have also been provided the opportunity to file a reply memorandum addressing the key issues.

Defendants contend in the motion for reconsideration that the court did not address their argument that Kaderbek is protected by qualified immunity in regard to the procedural due process claim brought against Kaderbek in Count II and the equal protection claim brought against Kaderbek in Count IV. Under Seventh Circuit precedent, a governmental official is provided with qualified immunity when performing discretionary functions when his "conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)(quoting in

part *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). We will address below whether Kaderbek is protected from liability by qualified immunity.

### A. Procedural Due Process Claim (Count II)

Defendants argue that Snitzer has not alleged the denial of a constitutional right in regard to the procedural due process claim.

#### 1. Clarification of Standing Arguments

Defendants argue that Snitzer has not shown a procedural due process violation since he lacks standing. Defendants contend that the court did not address whether Snitzer has standing specifically in regard to the procedural due process claim. In the August 15, 2007 ruling, we addressed whether Snitzer had standing in general to bring the instant action. We concluded that Snitzer had brought sufficient allegations to show an injury in fact to him personally, a causal link between the injury and the alleged wrongdoing, and that the injury could be redressed in this court. (8/15/07 OP 6-7). Defendants contend that the court misunderstood some of their arguments as to standing. According to Defendants, they intended to argue that Snitzer could not meet the general standing requirement and also could not show he had standing specifically in regard to the procedural due process claim. Defendants argue that the procedural due process claim has an added nuance since the stop work

13

order, around which the procedural due process issues revolve, was issued against Snitzer's development company, not against Snitzer. Defendants thus claim that Snitzer himself was not denied process, did not himself suffer any injury, and thus lacks standing. We address below Defendants' motion for reconsideration.

2. Reconsideration of Standing Issue as to Procedural Due Process

Defendants failed to specifically tie their standing argument to the procedural due process claim in their original motion to dismiss and thus did not make their position clear at that time. However, in light of Defendants' current clarifications and contentions that they raised the argument in their original motion to dismiss, we will revisit the issue. Reconsideration of the standing issue is appropriate since Defendants are not seeking to rehash the same arguments presented earlier and asking for a different result. Defendants are merely contending that the court did not consider all the standing arguments that they attempted to convey to the court. We are also satisfied that Defendants are not attempting to present new arguments that they omitted in their motion to dismiss and that they could have presented earlier. It is the duty of this court to address all of Defendants' arguments and ensure that the final ruling of the court does not reflect an error of law. Therefore, we will reconsider the standing issue as it relates to the procedural due process claim.

### 3. Shareholder Standing

A defendant is "shielded from suit" by qualified immunity "unless [the plaintiff] can demonstrate (1) the violation of a constitutional right that is (2) clearly established at the time of the alleged violation, so that a reasonable public official would have known that his or her conduct was unlawful." *Boyd v. Owen*, 481 F.3d 520, 523 (7th Cir. 2007); *see also MainStreet Organization of Realtors v. Calumet City, Ill.*, 2007 WL 3010633, at *2-*3 (7th Cir. 2007)(explaining Article III standing and prudential standing). Defendants argue that Snitzer has not alleged facts that indicate the denial of Snitzer's procedural due process rights and that Snitzer thus cannot satisfy the first prong of the qualified immunity analysis. Snitzer does not contest the Seventh Circuit precedent cited by Defendants that provides that "[s]hareholders do not have standing to sue for harms to the corporation, or even for the derivative harm to themselves that might arise from a tort or other wrong to the corporation." *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir. 1994)(Mot. Dis. 4). The stop work order was issued against Snitzer's development company rather than against Snitzer himself. Snitzer argues that his procedural due process claim is not based on the harm to the corporate entity. Snitzer contends that "once the defendants deprived him of his ability to pursue his chosen occupation," he was not provided with the "opportunity to be heard at a meaningful time and in a meaningful manner." (Ans. Mot. Recon. 6). This argument, however, makes little sense in the context of the facts presented in this case. According to Snitzer's own

exhibits to the complaint, the stop work order was issued to stop work being done by Snitzer's development company. (Compl. Ex. L). The stop work order was not issued against Snitzer personally, so as to preclude him from operating as a developer in the Bridgeport area. (Compl. Ex. L). Any right to be heard on the stop work order would thus have belonged to the development company. *See MainStreet*, 2007 WL 3010633, at *3 (stating "that, subject to certain exceptions, one cannot sue in a federal court to enforce someone else's legal rights").

A close look at the allegations in the complaint also reveals the flaw in Snitzer's argument that he wanted to be heard to stop the injuries he was allegedly suffering personally. Snitzer makes clear in his complaint that he believes that Defendants did not provide proper due process in regard to the stop work order because the City Municipal Code does not specify a procedure by which a developer can cure code violations. (Compl. Par. 158). That issue relates to Snitzer's development company rather than Snitzer himself. Snitzer was not personally accused of violating the City Municipal Code. His development company was accused and thus the opportunity to be heard on that issue was a right belonging the development company, not Snitzer. Snitzer provides no basis to conclude that any individual of the general public that believed he was being adversely affected by the stop work order could intervene in the affairs of the development company and individually seek the revocation of the stop work order. Also, Snitzer makes clear by his allegations that he is not asserting that he had such a right to be heard

individually on the stop work order issue. Snitzer alleges that his development company should have been accorded a hearing. (Compl. Par. 158).

As we discussed in our prior ruling, Snitzer asserts that he was personally injured by Defendants. Snitzer alleges, for example, that his professional reputation was harmed by the stop work order issued by the City. However, such alleged personal injuries are not directly connected to a denial of due process to Snitzer since the stop work order was not issued against him. Such injuries would be considered a "derivative harm" to Snitzer, a shareholder in Snitzer's development company, "that might arise from a tort or other wrong to the" development company, which, as indicated above, does not provide a shareholder with standing. *Hammes*, 33 F.3d at 777. Snitzer is seeking to individually "sue for harms to" his development company and recover for personal injuries, which is precluded in *Hammes. Id.* Thus, Snitzer lacks standing to bring a procedural due process claim and since Snitzer has not alleged facts that show a constitutional violation against him in this regard, Kaderbek is entitled to qualified immunity on the procedural due process claim (Count II). Therefore, we grant Defendants' motion to reconsider the ruling on the procedural due process claim and we grant Defendants' motion to dismiss the procedural due process claim brought against Kaderbek (Count II).

B. Equal Protection Claim (Count II)

Defendants argue that the court did not consider their argument that Kaderbek

is entitled to qualified immunity on the equal protection claim. In fact, we did consider that issue and made it clear that, based on the allegations in the complaint, Kaderbek was not entitled to qualified immunity on the equal protection claim. In the August 15, 2007 ruling, we devoted a separate section of the ruling specifically to the qualified immunity issue. As we explained in the August 15, 2007 ruling, a government official would be entitled to qualified immunity if his conduct did not violate a constitutional right of an individual. (8/15/07 OP 10-11). Also, as we indicated in our August 15, 2007 ruling, the complaint alleged that Kaderbek used his official power to harm the interest of a private citizen, for no reason other than to satisfy the desires of an associate for revenge against that citizen and not to serve a governmental interest. Snitzer clearly alleges that the code violations that were the basis of the stop work order and the other administrative measures taken by Kaderbek against Snitzer's development company were completely unfounded. We are not finding that these facts are actually true, but rather we are required to accept such facts as true at the motion to dismiss stage. Defendants merely rehash the same arguments in their motion for reconsideration that they presented in their motion to dismiss, arguing that Kaderbek initiated the actions against Snitzer's development company for legitimate reasons rather than for personal reasons. Such issues cannot, however, be resolved at the motion to dismiss stage. At the summary judgment stage, the parties will be able to rely on the evidence obtained in discovery and Snitzer will need to present sufficient evidence to support his position on those

issues. Defendants have not shown that the court erred in denying the motion to dismiss the equal protection claim brought against Kaderbek and Defendants have not provided any justification for the court to alter its prior ruling in regard to the equal protection claim. Therefore, we deny Defendants' motion for reconsideration as to the equal protection claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, we deny Snitzer's motion for leave to amend the complaint. We grant Defendants' motion for reconsideration as to the procedural due process claim brought against Kaderbek (Count II) and we amend the August 15, 2007 ruling to reflect that Defendants' motion to dismiss the procedural due process claim brought against Kaderbek is granted. We deny Defendants' motion to reconsider the equal protection claim brought against Kaderbek (Count IV).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 1, 2007